Good morning, Your Honors. May it please the Court, this case is about an individual, my client, John Farrar, serving a mandatory minimum 10-year sentence for the mere possession of drawings in violation of his first— Actually, he's serving, what, four additional years because the district judge back-bated the 10-year sentence? Your Honor, at the sentencing hearing, Judge Godbee was constrained in his judicial authority. He was constrained to give him a minimum— He hadn't answered my question. He's serving an additional four years beyond his 20-year sentence for the first offense. That's correct, Your Honor, but at sentencing hearing, the judge could do nothing but impose a mandatory minimum 10-year sentence, which— Is that because Farrar had pleaded guilty? That's because Farrar had pled no contest to that. Right, no low contendory. Thank you for the reminder. And in that no low contendory hearing, Farrar admitted that the magistrate judge who was taking the plea said she had never seen a no low contendory plea used in this fashion, and she required a factual basis for the plea, and the government presented it, and Farrar agreed that, yes, he agreed with everything in the factual basis, including that the material was obscene. Your Honor, there was a lot of back and forth— Please answer my question. Didn't he do that? Your Honor, yes, he did not contest the government's plea. He agreed with it. He did not contest it. He agreed with it. That's when the lawyer went into all this about, we're not going to hide behind some legal issue, and I wouldn't want people to have to look at this material, etc., etc. He agreed it was obscene. In the factual resume that was submitted to the court, John Farrar, through counsel, noted that he couldn't determine whether two petite juries would reach the same conclusion on these images. In the sentencing memorandum, he referred to this as a petty offense, Your Honor. There were various instances where they were saying they were going to challenge the punishment on Eighth Amendment grounds. In the confession that the government tendered to the magistrate judge, my client, John Farrar, consistently said, I had adult images. I hadn't seen this stuff in five years. The sentence he received violates his prosecution, 18 U.S.C. 1466A. Congress prescribes a wide range of lawful conduct, mainly the ability of individuals to possess obscene images in their home. The images at issue here are also not obscene. My client is entitled to an independent judicial determination of whether these images are obscene. This court's the backstop, and one could conclude that they're not obscene. In Ashcroft v. Free Speech Coalition, the Supreme Court weighed many of the rationales that the— On a factual basis, when it was presented to the magistrate judge, at the end, the magistrate judge said, again, not even required to have this because it was a nolo plea, but said, does the defendant have—this is it in the record, page 120—does the defendant accept the government's offer—does the defendant have any objection to government's offer of proof? No, Your Honor. And the defendant said, no, Your Honor. The court goes on. Then the court does accept the government's offer of proof as well. I just, again, I don't know why you're here trying to claim that we should engage in a second review of obscenity, Valenant, of this material. Your Honor, I'm here because that's exactly what the Supreme Court allows. Even when the defendant has agreed to the factual basis. Your Honor— Can you cite me one case where the Supreme Court says that? Your Honor, in Bose Court v. Consumers Union of the United States, 466— That doesn't sound like a criminal proceeding. It was not, Your Honor. No. So can you cite me one case with facts similar to this one where the defendant has pleaded nolo, the court goes ahead to protect the defendant and has a factual basis presented, the defendant has no objection to the factual basis, and then the court goes back and looks at the material again? Your Honor, in this case, which was not a criminal case, and I don't have a criminal case for you, the reasoning for why the court can make an independent determination whether the judgment was made by the jury or a trial judge was backed by reference to Miller v. California, Rehnquist and his dissent. It wasn't a plea proceeding. It was a civil proceeding. It was a civil proceeding that involved the First Amendment, Your Honor. Right. Rehnquist and his dissent— In that civil proceeding, had one of the parties agreed that the material was obscene? No. Your Honor— You and I are just talking cross-purposes because your client was given every opportunity to litigate this matter, and your client chose not to, including just accepting a nolo plea, which the magistrate judge said, this is so unusual for this type of proceeding, and went ahead and had a factual basis, and your client did not object to it. Your Honor, in the factual resume that was submitted to the court, my client laid out what he was trying to do there. He said, I don't know what these images are and what a petite jury would say about them. What I do know is that Danny Borgos, who came before Judge Godby, was given a reduced sentence because he got in front of Judge Godby as quickly as possible. What my client said was, I don't view this as a serious offense, which was kind of odd because he was looking at— I don't view this as a serious offense. He said that to the magistrate judge at the arraignment? He said that in his sentence and memorandum. Right. We're talking about what was agreed to at the arraignment, which Judge Godby accepted. Yes, Your Honor. That's what we're talking about, not what he's then on sentencing trying to urge something new. Well, Your Honor, this magistrate judge had not seen a nolo contendere plea in her 15 years as a U.S. attorney or her six years on the bench. Normally what she sees are people who come before her and say, I'm guilty of the offense charged. He wasn't willing to do that. That in and of itself is a pretty significant fact. Mr. Rice. Go ahead. I don't understand a magistrate taking a guilty plea. Isn't a nolo contendere a guilty plea? I thought district judges took guilty pleas. Not magistrates. Your Honor, in the Northern District of Texas, magistrate judges take guilty pleas normally, and then they file a report and recommendation for the district judge. Under Rule 11b-3, a nolo contendere plea only requires the magistrate judge to take the views of the parties. In this case, my client's view was that he didn't know what a petit jury would say about these images, and he didn't know that— I know you're saying that, but that's not the record where he said, I don't know what a petit jury would do, and it's a pettit jury. While you're looking, I do know that at page 113, his lawyer said Mr. Farrar's goal is not to try to hide behind the law and try to come out with some appeal issue. Your Honor, the record is page 31 and the first footnote. Excuse me? The first footnote on page 31. First footnote? On page 31. Was this an open court? Your Honor, this was a factual resume that was submitted prior to the rearrangement. So it's a written document, not a transcript? It's a written document that was submitted to the court. Mr. Reyes, since we do have a factual predicate or statement, does it—is there a showing in it that the alleged obscene materials traveled in interstate commerce? Your Honor, the reference under which he was prosecuted was 18 U.S.C. 1466 A.D. 5, which requires that it merely be possessed within the territorial jurisdiction of the United States. But that's somewhat problematic because the mere possession of obscenity is allowed within the territorial jurisdiction of the United States. In Stanley v. Georgia, the Supreme Court said that this is allowed in someone's private home. Here, Mr. Farrar was housed at F.C.I. Siegelville, where he ate his meals, where he slept, and where he received his mail. It was a government facility. It wasn't his private home. It's a government facility, but he still has constitutional rights within that government facility, Your Honor. You are really stretching your argument. Of course he has constitutional rights. He doesn't have a constitutional right as an incarcerated person—incarcerated because of child pornography—to have child pornography in his cell. You're not really arguing that, are you? Your Honor, that right could be curtailed to the extent that it relates to his isolation in the prison, his rehabilitation, or the internal security of the prison. Well, I said this was in his workstation where the materials were found. Is that right? The workstation is within F.C.I. Siegelville, which is what was stated in the indictment. On the Eighth Amendment grounds, if I may turn the Court's attention to that issue, in Ashcroft v. Free Speech Coalition, the Court had to decide whether visual representations, fakes, were the same as child pornography. There, the government advocated strenuously that these two things were equal, and it said visual representations can be used to entice children, they can be used to fuel the appetites of pedophiles, they can be used to fuel the market for child pornography, and they can be used in a way that would make it hard for the government to prosecute child pornography cases because we'll get to a point where we don't know whether these are real images or fake images. The Supreme Court weighed all those arguments, and it said we don't buy them. Children can be enticed with video games and candy. If this was fueling the market for child pornography, no one would risk being caught with real child pornography. The mere fact that free speech may entice criminal action at some indeterminate time in the future is not something we're going to buy. And finally, it's not a rationale we're going to buy into. We don't find that persuasive. And finally, it said, you know, whether this is a fake or whether it's real, it would make no sense to prohibit constitutionally protected speech in order to ban unprotected speech. The penalties which the court called severe in that case ranged from... That case did not spring from a person in a federal prison having child pornography in his workstation or cell, did it? No, Your Honor. That case was decided on whether the statute at issue, the CPPA, the Child Pornography Prevention Act, was overbroad or not. In the dissent, Rehnquist said, okay, we can draw a more narrowly tailored solution here if we want to protect the Romeo and Juliet scenario. We don't have to overturn these provisions. And the court said, no, we're going to overturn these provisions. The statute is overbroad. It didn't buy the rationale that these images, drawings, whether they be obscenity or not obscenity, were equal to child pornography. I didn't know you were making some sort of facial or as applied challenge to a statute in this appeal. I thought you were saying the sentence was too long. There are two parts to the appeal. The first is the violation of his First Amendment rights. The second is the violation that the sentence is too long, that it's cruel and unusual. In Rommel v. Estelle, which is the case that the court cited to in saying that we're going to dispense, I just can't reach the Eighth Amendment claim. And that's the case that the circuit often relies on when it's viewing the proportionality of statutes. Two things were not at issue. The constitutionality of the law and the ability of the state of Texas to impose the punishment that it imposed. In this appeal, both things are at issue. The constitutionality of this law, which punishes conduct that in some instances is legal, and also the way the law was applied to my client, John Farrar. Moreover, if we go back to the conversation I just had, every rationale that the government gave for punishing images in the same way as child pornography has already been rejected in Ashcroft. There, the Supreme Court directed the Congress to go back and draw a statute that fell under the obscenity provisions. Obscenity nowhere in this country, nowhere in the federal code, is punished the way Congress says that the possession of having these images, whether they be obscene or not, should be punished. Did your client ever attempt to withdraw his plea and go to trial? Your Honor, the strategy that my client—no. No. The strategy that my client— Your father would be real sorry if that happened. Is that your advice, to withdraw the plea and go to trial? In— With a 4-year sentence on a 10-year mandatory? Or 20? What was it? 10, I think. Your Honor— I mean, you might want to be careful what you ask for. Your Honor, in the factual resume that was submitted to the court in the record at page 38, my client expressed a concern that if he challenged the statute and went to trial, that the court may impose more—that the government may proceed with more severe charges. That happens sometimes, you know. That's the course of power of the state, Your Honor. In closing, Your Honor, I would just say that imposing the mandatory minimum sentence of 10 years that the court imposed in this case cheapens the rationale for the severe penalties that are imposed when people possess child pornography. Child pornography, when it's made, involves real children. This did not involve real children. It has a harm to the child at the time it's made, and it has a continuing harm when it's viewed. These drawings are just drawings. Thank you. Ms. Fowler, come here. Let me ask you an initial question. You're claiming that these drawings are obscene, but yet you filed them into the public record in your brief without putting them under seal. What in the world were you thinking of? Now you've punished — you've published what you call obscene drawings. Well, Your Honor, they were — the version of our brief that contained the images was filed under seal. It was? We did. We specifically filed that version of the brief under seal with a motion to file under seal, and then also filed a redacted version publicly. Just the drawings? Just — yes. Okay. Yes, yes. And precisely because of Your Honor's concern that we didn't want — you know, we — it's our office's invariable practice that if there's a key exhibit, because it isn't so — it's kind of a cumbersome process to get those exhibits down to you all, I know, to try to cut and paste into our briefs where possible. But here, of course, with the sensitive subject matter, we did file under seal. Right. We did. So I would just start with the First Amendment issue. A couple of points. One, of course, is the standard of review. I think it's hard, looking at these images, to have any real questions. Let me ask you a question from the get-go. Why didn't the government claim that this challenge to his conviction was waived, either waived because of his NOLO plea or waived because of judicial estoppel with agreeing to the factual basis and now back up here wanting us to review this material? Why didn't the government take that position? I think — I think we could have — I think we could have raised that argument, Your Honor. Why didn't you? You instead talk about plain-air review. Well, I think plain-air review is kind of the best he can hope for. We, you know, ultimately didn't want to look like we were kind of running away from — I mean, no matter how you slice it here, whether it's, you know, whether it's plain-air review, whether it's de novo, I mean, these images are clearly obscene. Certainly, I think there's also a strong argument that he should even be estopped from raising this claim, having, you know, pled no contest below, and especially in light of his comments to the district court saying, well, I'm not trying to lay behind the law here and come out with an issue on appeal. It does — it does create an appearance, at least, of some kind of a procedural sleight-of-hand to sort of say, well, I'm going to bypass the fact finder on what is a quintessential jury question and attempt to take that straight to the court of appeals. I think — I think that would create a strong argument for estoppel. But ultimately, you know, it was just kind of a strategic decision here because the case for the images being obscene was so abundantly clear, we ultimately just went with — with plain air. And in addition, you know, looking at a lot of cases where a defendant pleads guilty, has a factual resume, you do see oftentimes defendants kind of coming up on appeal and saying, oh, well, there's actually — there weren't really sufficient facts to commit me. But he doesn't say that here. In fact, he said in court before the magistrate judge who filed a report with the district judge who adopted it, he agreed that his conduct satisfied the elements of the offense. He — he agreed — that's true. I mean, he agreed that — that the government could prove each element beyond a reasonable doubt. I mean, again, I think there's just a little bit of procedural — I don't want to use the word trickery, but there's a little something — Usually when they're challenging an appeal, a plea, I'm sorry, here they're saying, well, my lawyer didn't explain it to me, or, well, the judge didn't explain it correctly. There's none of that here. That's why I'm at a loss as to why the government didn't say this — this challenge to the conviction is waived instead of going into this plain-error argument. Well, I mean, I think that would be — I think that would be a way to dispose of the case, Your Honor. I think — I think the argument could certainly be made that he should be stopped now from raising it. I thought in terms of the cases that I found in my research, I thought it was most analogous to a case like the Walker case where you have a defendant who's pled guilty, who signed a factual resume, and then has come out on appeal and said, actually, the facts in this don't add up to the elements of the offense. And so, therefore, you know, the court should — But that's not the claim here. There's no claim that the elements in this factual resume don't add up to the offense. Well, I think — I think that's ultimately — I guess my estimation of it was that's essentially what he's saying. You know, is that — is that saying these images — Well, that's not essentially what he's saying.  I don't recall that being in his brief. Well, I mean, his argument is, oh, I said below that the government could prove these images are obscene, but now I'm saying they're not obscene. And that's the factual question there. But, Your Honor, I mean, absolutely. I mean, of course the government would not be opposed to — you know, if the court found that he was stopped from even bringing this claim in the first instance, you know, obviously we — Assuming, for sake of argument, that he had made that argument, what's your response to it? That he had made the estoppel argument? I mean, sorry, that he had made the — What you were going to argue against, assuming he made the argument? I'm sorry. I'm sorry. If he had argued — That there was no factual basis for his plea. Right. Right. So, you know, our argument, of course, is just that the images are obscene. You know, that's a factual — it's a factual question. Yes, it's a constitutional question. It has a constitutional dimension, but it's also — it's a three-part test. That's a factual test. You know, the first question under the Miller test being whether the average person would look at these materials and find that they appeal to the prurient interest. You know, the second being whether the work depicts sexual conduct in a patently offensive way. And third, whether the material has serious literary, political, or artistic value. So our response, if indeed that is the argument he's making, which is my understanding, is that he's saying the images are, in fact, not obscene. And our response would, of course, just be to go tick through, as we did in our brief, each of those prongs of the Miller test and show how, in fact, the images were obscene. And I could go into further detail, if you would like, about why each of those is satisfied. You know, I think one point that he contests in his reply brief is this average person, would find that the images appeal to the prurient interest. And whether or not we, how do we adapt that point when you consider that these are, you know, pedophilic images. The Supreme Court has been very clear that when, in Michigan, and also in the Hamline case, that when you have something that's clearly targeted to a deviant audience, that you do adjust that prurient interest question. You adjust the average person is considered to be the average member of the recipient group. And his argument, of course, here is that the average person wouldn't look at these and find that they are appealing or erotic in any way. But that's precisely the type of defense that the Supreme Court is looking to foreclose, that when you have deviant material, that it shouldn't be harder for the government to prove that it's obscene just because it only appeals to a deviant group. And, of course, whether it depicts sexual conduct in a patently offensive way is, I think, from looking at the images. And then finally, that last point, and this is the one I think that he contests the most strenuously, is whether the images have serious literary, political, artistic value. And one point we would want to make is that I think he's misstating the test about the value of the images. The government is not required to prove, or would not be required to prove in front of value to these images. I mean, he raises some possibilities. Well, maybe the viewer might be curious about the manner in which they're drawn, or maybe a viewer might wonder why the person drew these images. And even if, arguably, that could establish some value to the images, the question is not whether they are wholly devoid of value. The question is whether they have serious literary, artistic, and political value. And this is, to Mr. Hernandez's argument just moments ago, about the Romeo and Juliet question. I mean, this is how we protect Romeo and Juliet. This is how we protect Lolita within the confines of the Miller test. So that would just be our response, Your Honor, to if indeed he is challenging. And I believe he is, saying the images are now not obscene. Another point I wanted to make on the race moment issue is that the Free Speech Coalition case that he keeps mentioning, Ashcroft versus Free Speech Coalition, that case is wholly in a posit here. It's really not relevant at all to this case. The Ashcroft case, that was a virtual child pornography case. So the government in that case had used the child pornography statute to prosecute a video game, I believe it was, that was a very realistic depiction. But they were not actual children. It was a video game. And the Supreme Court, in that case, the constitutional issue there was whether it violated the First Amendment to use the child pornography statute in that way. And the Supreme Court held that it did because child pornography receives less protection because it involves real children. So the Supreme Court said, so child pornography doesn't have to satisfy the Miller test. It doesn't have to satisfy that obscenity test. If there's an image of a child, it doesn't have to be qualified as obscene under Miller to be able to be prosecuted. And the Supreme Court there said, look, you can't use the child pornography statute to prosecute these types of images that don't involve real children because there's no concomitant harm to real children. And so that is why Congress went back to the drawing board and drafted the statute we have in this case. The obscene visual representation statute, or OVR statute. So what he's saying in his argument, though, that the Supreme Court in free speech coalition somehow rejected the idea that these OVRs, obscene visual representations, are problematic is not true. I mean, essentially the court just said, look, if it's a drawing or a video game, a computer rendering, that's entitled to more protection under the law than an actual photograph of a child. And the protection it gets is Miller. So the OVR, sorry, Your Honor, did you? Go ahead. The protection it gets is the Miller test. It has to be able to, you know, the government has to be able to prove, you know, all three prongs of Miller in order to prosecute an OVR, a visual representation, a drawing. And so that's what Ashcroft stands for. That's all it stands for. Ashcroft has no bearing on whether the government can prosecute OVRs and whether, you know, it certainly is not an Eighth Amendment case. The Supreme Court specifically upheld the statute in this case? Or did we simply deduce that from Ashcroft and other cases? I don't believe that the Supreme Court has specifically faced a facial challenge to this statute, which reminds me of another point I wanted to mention, which is that there is no facial challenge to the statute here. He mentions a number of things that, oh, under the statute, the government can prosecute someone in their home for having a drawing on the back of a napkin in their home. That's my understanding of those arguments is that that goes to whether the statute is overly broad. But the only issue here is whether it violates the Eighth Amendment's prohibition against cruel and unusual punishment. That and whether the images themselves are obscene. But he's not challenging the statute. He's just striking down the statute. Right, right, exactly. Yes. Correct, Your Honor. There's no facial. There's no challenge to the validity. Yes, absolutely. That's absolutely correct. There's no challenge to the validity of the statute itself. And so a lot of the arguments he's raising, while interesting, are not relevant here where that's not before the Court, whether the statute itself is overbroad or constitutional in all of its possible applications. So, but to answer your question, Judge Genis, no. I don't believe that the Court has specifically addressed that issue yet. So just with the remainder of my time, I wanted to move on to the Eighth Amendment issue to make a couple points here. There's two components to his Eighth Amendment argument. He argues that his particular punishment, this is the as-applied challenge, that his particular punishment was grossly disproportionate to his crime. And then that the 10-year statutory minimum itself is always, you know, categorically going to be cruel and unusual, no matter what. Now, that second point, I think we can easily dispose of the categorical challenge because the Supreme Court has never recognized in any context a categorical challenge to a simple term-of-year sentence. The only categorical challenges that the Supreme Court has ever found to even be cognizable claims are to death penalty sentences, and that's cases like Atkins for people with intellectual disabilities and so on and so forth, or to sentences of life without parole specifically for juveniles and for juveniles only. And if you look at those juvenile cases, and we talk about those in our brief, the Supreme Court has specifically said that the problem with those life without parole sentences for juveniles has to do with the particular characteristics of juveniles themselves, that as offenders they are not as culpable, that they also don't understand long-term consequences as well and can't be deterred. But the Supreme Court has never recognized that a simple 10-year statutory minimum sentence or any number of years minimum sentence could be cruel and unusual punishment. They've never recognized that. For this court to even entertain a categorical challenge would be for the court to be getting fairly far out in front of the Supreme Court on this issue. So the only real live issue here is the as-applied challenge. Was the sentence as applied to Mr. Farrar itself cruel and unusual? And just one thing I would mention, in addition to we discussed in our brief that of course he's going to do nowhere close to 10 years, but what triggered that is the fact that he's a recidivist. Okay, it's not the fact that he has his representations and in fact there's no minimum sentence, I may be saying that wrong, but I believe there's not a minimum sentence. I believe that there's no statutory minimum sentence for possessing an obscene representation in and of itself if one is not a recidivist. But if one has a prior conviction for child pornography, that person will be punished more harshly. And that reflects Congress's judgment and it was in the findings specifically enacted with this legislation that these images, and you all have seen the images here, they're very gruesome, realistic images that pedophiles can use these images to fuel their appetites. And that puts real children at risk. So of course when you have a person who's a recidivist, who's already been convicted, he was a contact offender. He was serving time for producing child pornography with the child of a family friend. That's why he was in prison when he was found with these images. So everything that Congress is saying here about an offender like that being a dangerous person applies absolutely to him. And so it's hard to make the argument that it was grossly disproportionate, rising to the level of cruel and unusual punishment, for Congress to want to punish someone like that, for Congress to want to incapacitate someone like that and keep them away from children for 10 more years. Now of course here he will not spend anywhere close to 10 more years away from children. He'll be out in four, which we still do feel is a shame. But that's the case here. So on that as-applied challenge, this Court has repeatedly said that this is a very narrow review. Mr. Reyes did make a number of arguments in his, just recently, in his argument about the sort of policy rationales for this statute. Well, the Eighth Amendment cases are very clear that this Court, and any court, any court anywhere in the country, does not sit as a super legislature passing review over the legislature's policy judgments about what they want to punish and why, and how it's really just an ultimate backstop against sentences that are just so far out of line that they rise to the level of cruel and unusual. And that, this Court has said repeatedly, will be the rarest of instances. So in this case, certainly, certainly does not rise to that level. Mr. Reyes mentioned in his argument, again, the Free Speech Coalition case, saying that the Supreme Court rejected the rationales that I mentioned just now for punishing these types of representations. That's not what the Court said in that case. It was not, first of all, an Eighth Amendment case. And second of all, the Supreme Court only said that those rationales were not enough to exempt visual representations of children, obscene drawings and so on and so forth, from the Miller test. The Court did not say that these are not valid reasons to punish someone for those types of representations, but the Court just said that's not enough to exempt a drawing or a video game or what have you from Miller. The Government still has to prove the elements of the Miller test. That's what the Free Speech Coalition says. So if the panel has no further questions, we would just ask the Court to affirm in full. Thank you, Ms. Falkner. Mr. Reyes, you have five minutes for rebuttal. Thank you. The Government argues that this Court does not sit as a super legislator, and normally that may be a valid proposition. But in this case, the rationales for this punishment have already been examined in Free Speech Coalition, and they were rejected. Also, I would note that in Hammerlin v. Michigan, which is a case really about redefining and speaking about the common principles that give context to the uses and limits of proportionality review, the Supreme Court said that no form of punishment is per se constitutional. Therefore, even a term of years can sometimes be questioned. The United States Supreme Court has questioned specific punishments far below 10 years. In Robinson v. California, the State of California tried to imprison someone for the mere status of being a drug user. The Court in that case said, even prison for one day would be too much because that's not a crime. Here, we have questioned whether the facts add up to an offense, Your Honor. In the initial brief in pages 11 to 15, there are arguments made for why these images may not pass the Miller test. Also, the minimal value of the third Miller prong, which was forcefully argued in that portion of Appellant's brief, makes it very clear that these images may have some artistic, may have political value. They may have a message that the community may find acceptable. The government, in arguing that by looking at these images, we can easily determine who the intended audience is, is really making a lot of inferences. We don't know where these images were drawn or who drew these images. In the confession that the government submitted to the Court, my client said, I hadn't seen these images in five years. I didn't know why they were there. Finally, Your Honor, I would say in closing, just one final point. In my reply briefing, in response to the government's invitation to go out and catalog statutes that are perhaps as severe to show a community consensus, I pointed to a Massachusetts statute and I indicated that under some circumstances a person may be punished for a certain number of years, but that citation was wrong. The more applicable statute is Massachusetts 272, Section 29, which would punish my client for the possession with the intent to distribute these images, distribute, for up to five  I have nothing further, Your Honors. Thank you, sir.